Good morning, your honors, and may it please the court. I'm Sean Kennedy on behalf of the petitioner Eliseo German, or Herman. I'd like to reserve, with the court's permission, two minutes for rebuttal. Your honors, any public defender working assault knows how difficult it is to prevail on a Jackson claim, given the high standard. And the U.S. Supreme Court has reminded us, I acknowledge, very recently, as recently as last week, that it's an even more difficult burden under the AEDPA. But this is such an unusual case that we can prevail even under that difficult double burden. And I say that because we're not here to ask the court to re-weigh facts and come to a different conclusion. The reason that we raise this is because the California gang statute is very broad, but the courts have also said, uniformly, that simply being a gang member with other gang members does not constitute a gang-related offense. Those are California courts you're talking about? Yes, the California Supreme Court under Abelard and this court under Emery says the same thing. While there were previous problems under prior Ninth Circuit cases, like Brisenu and Garcia, with the second prong of 186-22, it's clear that it has to be gang-related. We were just focused on the wrong element. Didn't the California courts grapple with that issue and say it was? In this particular case, yes, the California Court of Appeal did say that this was sufficiently gang-related because the expert testified that, based on his education, training, and experience as a gang expert, that he thought it was enough. The reason we're here is because general and speculative expert testimony that really is not tied to the specific facts of the case ought not to be enough to satisfy evidence that a rational trier of fact can rely on to find that element of the offense. Is that what you're asking us to review under AEDPA? Is this really a Jackson question or are you now making this into an admission of testimony that is somehow unconstitutional? No, I'm not saying that. I'm saying that expert testimony has to be rooted in the facts of the case in order to meet the standard of sufficient evidence. And here it's not. When you look at what Officer Tamperong said, he admitted that this was not the usual gang-related offense you would see. He called it uncommon and that he couldn't understand why it was done. But then he opined, drifting completely from the facts of the actual case, that perhaps the gang had some kind of beef with the homeless people in the area of Rockwood territory and that maybe they were going to, quote, try to clean up the streets. Did he say that perhaps as a kind of amusing? What were his words? I don't remember him using that word. He may have. Your Honor, he said, I think it's excerpt of record number 98. He said, they're worried about, this is that excerpt of record 98, they're worried about maybe they want to clean up their street. And then the DA said, right, is that something you think they're particularly concerned about? And the gang expert said, I don't know if there was a feud before. But for cleaning up the street, transients, I believe that would be part of what they would do. So he didn't say perhaps. He said, I believe that would be part of what they would do. Yeah, he says, I don't know if there was a feud before. And so he didn't use the actual word perhaps. But I think the characterization I'm making is the same. It's not. He's in this neighborhood every day. He specializes in Rockwood and he claims to be there every day. If there were any actual evidence that the gang had a feud and that the reason why these three gentlemen were attacking the homeless man was because of that, Officer Tamperon would be the person who would know. But even he was unable to provide a fact specific explanation that would show why this fight was for the benefit of the gang. Boy, it's a great argument at levels other than ours. It's tough when you get here. Well, I understand. But although AEDPA is tough, it does not allow a federal court to completely abdicate its role to review cases. And unlike the Shirley Smith case or the case from last week, Coleman versus Johnson, I'm not asking this panel to reweigh the facts. I'm asking the panel to look at the experts' testimony and it will show that there is simply no evidence of the gang-related offense part. And it's completely in violation of California law, which says that gang members who are on a frolicking vetour can commit a crime that does not meet the gang enhancement. This argument was presented to the California courts? Yes, the state appellate lawyer did argue that the evidence was insufficient as a matter of law for the enhancement and we lost. And he lost? We did. But under AEDPA, that begins the inquiry because the question is, is it an objectively unreasonable application of the Supreme Court's law in Jackson? And I think it is. And it goes as far as this, Your Honors. At one point, the expert is questioned about if there was self-defense or imperfect self-defense. And there were real questions in this trial. The jury acquitted a German of attempted murder and attempted voluntary manslaughter, presumably because of the extensive evidence of how combative the homeless person was, even on the stand at trial and his conduct on the streets. And the defense counsel said, well, what about that under your sweeping view of the gang enhancement statute? Would that be for the benefit of the gang if the homeless man stabbed, which he did, that's uncontested, and the other three defendants came in in defense of self or in defense of others? Would that meet it? And he said, and this shows how dramatic this testimony is, yes, it would be. A jury made this finding? A jury is required to find the enhancement beyond a reasonable doubt, yes. The case that I just read from the Supreme Court, with which you're very familiar, told us to stay the hell out of the province of the jury. That's what the jury is for. And the jury heard this. Yes. And ruled against you. And all the California court said was, really, there's enough to support the jury. But in every Jackson claim, the jury has made a decision. The question is, is the evidence that the jury relied on sufficient for a rational jury to determine beyond a reasonable doubt? In order to prevail on a Jackson claim, then don't we have to find that the California courts were unreasonable in not directing a verdict on that question? I do think you'd have to find an unreasonable application of the standard, and I think it would be. So it would have to be, basically, that the California courts committed constitutional error by failing to direct a verdict on the gang enhancement question? Yes. In fact, the defense counsel did ask for a directed verdict, and it was denied. But when you look closely at the record, and of one concern is there's no mention in the state court opinion of frolic and detour. And noticeably, there's no mention in my opponent's brief of frolic and detour, even though it is the fundamental and overriding limitation. Was there any evidence in the record for the jury to decide whether or not there was frolic and detour? Well, yes, there were. Two defendants took the stand and testified that they were attacked by Mr. Burst, and that after he stabbed, and this was uncontested. And what were they doing over in the area where he was? Well, it's two blocks from their homes, and they were. Still, what were they doing in the area? Were there grocery stores there? Was there some reason? I don't know this area, but this was an area where we had a homeless man living in a tent, so. Yes. They claim that one of their friends, Mr. Hernandez, had had too much to drink, and they were going to get him to drive him home. And this is all in their neighborhood, and they were a couple blocks from their home where they had been drinking and watching the Lakers game. I see that my time has concluded. Unless there are any other questions, I'd like to save my rebuttal. Certainly. Thank you, Mr. Kennedy. Thank you. Thank you, Judge Bybee. May it please the Court, Deputy Attorney General Michael Katz for responding. This is a case about double deference. Under Jackson v. Virginia, the jury gets deference for its verdict. It gets to make the credibility determinations. It's double deference because of the ADPA. This is not like any Jackson case. It's an ADPA Jackson case. Under the ADPA, the question is whether the state courts unreasonably applied Jackson, and it did not. The California Supreme Court in Albala, which is the binding opinion on gang enhancement sufficiency, tells us that if an expert testifies to the defendant's criminal conduct benefit of the gang by enhancing the gang's reputation for viciousness, that is sufficient for the jury to make an inference. In this case, the gang expert did testify in that manner. I disagree with my worthy opponent, Mr. Kennedy, about what the gang expert said. If you turn to our brief on page 11, citing pages 84 to 86 of the excerpt of record, it states the gang expert was unequivocal about his opinion, and the opinion is consistent with sufficiency of the evidence under Albala. In addition to what the gang expert testified, the victim knew that his assailants were gang members and that it was in gang territory, although the victim recanted his testimony or his statement to that effect at trial, which my opponent stresses. Under California law, the jury was entitled to consider the prior inconsistent statement as substantive evidence, and I cite California law in my brief to that effect. There were tattoos that were visible on the gang member's hands. That's the inference you could make from the supplemental excerpts of record at pages 514 to 517. There was gang graffiti on the warehouse wall, which was the scene of the crime, stating, Watch your back in court, all of you. The expert testified that that was by gang members. That was in the excerpts of record at page 138. As for the self-defense testimony that the hypothetical presented to the expert regarding self-defense, that's really a credibility determination for the jury to make. Essentially what Mr. Kennedy is arguing is that it was so incredible for the gang expert to say that that this court should overturn the jury's verdict, and that's not proper given all the evidence in the record here that I just mentioned. There were ways to interpret that gang expert's testimony at that point that were perfectly reasonable. For example, under California law, you could exceed your right to self-defense if you use unreasonable force. Also, it's true that the gang expert's testimony to that point was, well, the gang members would lose face. If they didn't defend themselves against a homeless man, they would lose territory. He wasn't suggesting that that would be sufficient evidence under that hypothetical for the gang enhancement finding to be true. He was merely saying the gang was acting for its benefit as a factual matter, according to street custom. You know, I have to tell you, if I were the trier of fact, I'd rule against you. But with a double deference, you've got a good case. Well, I guess I should – It's as thin as you could ever get for a gang enhancement, as far as I can tell. Well, Your Honor – If I tried to make up an exam as a law school professor, I don't think I could make it any more thin than this. Well, I disagree with the last part. I expect you would. I'm just telling you that this is – you're fortunate that the Supreme Court just reinforced again and told us that things like this are for the jury. Stay out of it. I also want to respond to the frolicking detour. I guess I should respond to your – I'm not sure whether you want me to respond to your question. No, it doesn't do any good. I think what I think, and you're not going to talk me out of it. That's fine. Under the frolicking detour analysis, which my opponent, Mr. Kennedy, stresses, I wanted to say this. All the cases that he's cited in his initial brief I distinguished in detail. There were – the frolicking detour comment comes from the Morales case, the 2003 California Court of Appeal case. They coined that term, frolicking detour. Just because you're a gang member, not everything you do necessarily qualifies for the enhancement. That is true. You wouldn't argue against that. I'm sorry? You wouldn't argue against that, I would expect. I would not argue against that. Okay. And that's what this case looks like to me. But, again, it's irrelevant, so. Okay. So I respectfully disagree with you about that. But, as he said, it doesn't matter, so I'm not going to waste your time. At some point, though, after the California Supreme Court's decision in Albalard, it looks like almost any time gang members are found together and something bad happens, that you may be getting a gang enhancement. Well, I think that's a bit of an overstatement, Judge Bybee, because if something bad happens unattributable to their conduct, that's not enough. So if they act together in concert to commit a crime, and the gang expert testifies to what I mentioned earlier, that would be sufficient for a jury to make that inference. That's correct. We have more than that here for the reasons I mentioned earlier, but we wouldn't need more than that. That's true. And I don't think that's so unusual or terrifying, because experts testify in similar ways in many other kinds of cases. If you were trying to drive under the influence case, the expert would say, weaving in your lane, having glassy, watery eyes are things I considered to determine this person was under the influence of alcohol. It's conceivable that that could happen in hundreds of thousands of cases across the country, and yet it's for the jury to determine whether they believe the expert. Similarly, in a possession for sale of cocaine case, probably thousands of cases across the country involve an expert saying, I think this cocaine was possessed for sale based on the amount, based on the digital scales, based on pay-o-sheets. Those are not unique facts, and you could find a case. Who started this brawl? Who started it? Well, under the prosecution theory, it was the defendants. I mean, that was for the jury to determine. Under the prosecution theory, it certainly wasn't Mr. Burst. And he was in his tent by himself, and they burst into his tent. And I disagree with Mr. Kennedy again where he says that there was some serious question about that, about Mr. Burst's aggressiveness. I mean, that was for the jury to determine. When the jury found the defendants guilty of the aggravated assault, they rejected the self-defense claim. It's true that they rejected the attempted murder charge, which would have required an attempt to kill on the part of the defendants. But by clearly convicting the defendants, all three of them, of aggravated assault, they obviously rejected self-defense. They didn't believe it. So they had two competing stories. One was the prosecution story. They burst into the victim's tent. He didn't do anything wrong. They beat him up just to be cruel. The other was the defense story that the victim started it. The jury didn't believe the defense story. So under the frolicking detour argument, I just want to say this. Morales, although it coined the term frolicking detour, it rejected in that case that there was a frolicking detour. It said that it was conceivable that the gang could have committed the crime, that the gang members could have committed the crime unrelated to the gang, but it found there was no evidence of this and there was sufficient evidence to support the jury's verdict. El Bilal, the California Supreme Court case, cited Morales to that point. It found there were competing inferences between whether the gang members acted as family members because they were related to each other or whether they acted as gang members. It said it was for the jury to determine. And so it rejected frolicking detour again. Here, there wasn't even evidence that the gang members were related, so there's no family member evidence that would compete against that. It was for the jury to determine whether it was frolicking detour. They rejected that. The two cases that my opponent cites in his reply brief do not support him on this. The Douglas case, which he cites, actually found there was substantial evidence to support the jury's gang enhancement determination, and the Thompson case involved one gang member who possessed a gun on this person. He happened to be with another gang member when it happened, but they didn't commit it together, unlike in this case. So unless the Court has any other questions, I'm prepared to submit it. Thank you, Mr. Katz. Thank you. Mr. Kennedy, I think you used most of your time, but we helped you with that. I'll give you a minute. Thank you, Your Honor. The Attorney General today agrees that frolic and detour is a valid doctrine, but the expert that is presented, really the only evidence presented, doesn't. He states that excerpts of Record 115, when they're playing loud music in the gang thing would be for the benefit of the gang and qualify you for the enhancement. Yes, and counsel says, can you think of anything that these three men could do that would not benefit the Rockwood gang in this particular location, anything at all? Referring to the stronghold where they live. And he says, standing in the front, they would be trespassing. I can't think of, I don't know if you mean a minor infraction. And the question is, if the three of them are just standing there in front of the location, they're intimidating the community? Yes, they are. And that benefits the gang? Yes, it does. So under this view of the gang enhancement, in this expert's opinion, it doesn't comply with state law, and a rational jury can't use that as its sole basis to find the enhancement. Even under... Have you ever been in gang territory and seen three of these characters standing there staring at you? Well, I've represented gang members for 20 years, Your Honor. Yes, I have. And there's still punishment for the crime. He was sentenced for the aggravated assault. The question is whether he should get an extra 10 years for a gang-related offense based on this evidence. And even under Shirley Smith, I think the answer should be no. And that's why I asked this panel to reverse. Thank you, Mr. Kennedy. Thank you. Both counsel for the argument. Cameron v. Horrell is submitted. And the next case is Dunnex v. City of Oceanside.
judges: Duffy, Trott, Bybee